**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

LISA KAY V.,[1]               )
                                )
          **Plaintiff,**     )
                                )    **CIVIL ACTION**
**v.**                           )
                                )    **No. 18-2665-JWL**
ANDREW M. SAUL,[2]          )
**Commissioner of Social Security,**   )
                                )
          **Defendant.**     )
_____)

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.    Background

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.
[2] On June 17, 2019, Andrew M. Saul was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff filed an application for DIB on May 2, 2013 alleging disability since March 1, 2009. (R. 264-71). A court of this district previously reviewed a decision of the Social Security Administration (SSA) denying that application and remanded to the Commissioner to properly consider impairments other than those she[3] found severe at step two of the sequential evaluation process. (R. 1036-38). On remand the Commissioner once again found Plaintiff is not disabled within the meaning of the Act (R. 943-55), and Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff argues that the ALJ's residual functional capacity (RFC) assessment is not supported by the evidence because he erroneously evaluated the opinion evidence and the allegations of Plaintiff.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see

---

[3] At that time Ms. Nancy A. Berryhill was the Acting Commissioner of the SSA.

also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  To

overturn an agency's finding of fact the court "must find that the evidence not

only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S.

478, 481, n.1 (1992).

The court may "neither reweigh the evidence nor substitute [its] judgment for that

of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala,

36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record,

nor try the issues de novo, nor substitute [the Court's] judgment for the

[Commissioner's], even if the evidence preponderates against the [Commissioner's]

decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless,

the determination whether substantial evidence supports the Commissioner's decision is

not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v.

Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a

claim for disability.  20 C.F.R. § 404.1520;[4] Wilson v. Astrue, 602 F.3d 1136, 1139 (10th

Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a

determination can be made at any of the steps that a claimant is or is not disabled,

---

[4] Citations in this decision to the Code of Federal Regulations are to the 2018 edition
except as otherwise indicated.

evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

## II.    Evaluation of Opinion Evidence

Plaintiff argues the ALJ erred in according significant weight to the state agency medical consultant, Dr. Listerman, because the opinions of non-examining physicians are worthy of the least weight and "are not substantial evidence to support the ALJ's

decision." (Pl. Br. 25). She argues Dr. Listerman did not consider all her impairments and has no specialty relevant to her impairments. Id. She claims the ALJ should have accorded greater weight to the opinion of her pulmonologist, Dr. Seto, because the reasons the ALJ discounted that opinion are erroneous. Id. at 26-28. Plaintiff also claims the ALJ erred in weighing the "other" medical source opinion of nurse-practitioner Ms. Howard, "rejected every opinion [Plaintiff] should avoid strenuous activity and taking [Plaintiff] off work during periods of COPD [chronic obstructive pulmonary disease] exacerbations" and failed to discuss her "ability to perform sustained work activities on a regular and continuing basis." Id. at 29, 30. Finally, Plaintiff claims the ALJ erroneously rejected the third party statements of two former employers and her daughter-in-law regarding how her symptoms affect her. (Pl. Br. 32-33).

The Commissioner responds that the ALJ reasonably weighed the opinions. He argues the evidence supports the weight accorded Dr. Listerman's opinion and the ALJ provided "additional postural and hazard limitations due to Plaintiff's continued back treatment and her COPD." (Comm'r Br. 7). He argues that although Ms. Howard's opinion was provided several years after the relevant period it supports the RFC because Plaintiff has a degenerative impairment and Ms. Howard opined she is not disabled even many years after onset. Id. at 8. He argues the ALJ's assessment of partial weight to Dr. Seto's opinion is supported by the evidence, but that even if he had accorded controlling weight to the opinion it would not have changed the outcome because the opinion was formed in December 2013 whereas Plaintiff's date last insured was September 30, 2013. Id. at 8-10. Finally, he argues that if the court finds the evidence equivocal and could

5

support both the ALJ's and Plaintiff's position, the Commissioner's decision must be affirmed because where the evidence supports two inconsistent conclusions one of which is the Commissioner's, the Commissioner's decision must be affirmed.  (Comm'r Br. 11) (citing <u>Lax</u>, 489 F.3d at 1084).

## A.     <u>Standard for Evaluating Opinions</u>

For claims filed before March 17, 2017, "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources[5] that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis."  20 C.F.R. § 404.1527(a)(2).  Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, <u>all</u> medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations.  <u>Id.</u> § 404.1527(c); <u>Soc. Sec. Ruling</u> (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2019).  A physician who has treated a patient frequently over an extended period (a treating source) is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to

---

[5]The regulations define three types of "acceptable medical sources:"

"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. § 416.902 (2016).

"Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship.  <u>Id.</u>

"Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion.  <u>Id.</u>

"particular weight." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2019) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must confirm that the

opinion is also consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

If the treating source opinion is not given controlling weight, the inquiry does not end. Id. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003); 20 C.F.R. § 404.1527(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)). After considering the factors, the ALJ must give reasons in the decision for the weight he gives the medical opinions. Id. 350 F.3d at 1301.

The regulations explain how opinions from medical sources who are not an "acceptable medical source" will be considered and how the ALJ should articulate his evaluation thereof. 20 C.F.R. § 404.1527(f).

(f) Opinions from medical sources who are not acceptable medical sources and from nonmedical sources.

8

(1)  Consideration.  Opinions from medical sources who are not acceptable medical sources and from nonmedical sources may reflect the source's judgment about some of the same issues addressed in medical opinions from acceptable medical sources.  Although we will consider these opinions using the same factors as listed in paragraph (c)(1) through (c)(6) in this section, not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source or from a nonmedical source depends on the particular facts in each case.  Depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an acceptable medical source or from a nonmedical source may outweigh the medical opinion of an acceptable medical source, including the medical opinion of a treating source.  For example, it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole.

(2)  Articulation.  The adjudicator generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.  In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision in hearing cases and in the notice of determination (that is, in the personalized disability notice) at the initial and reconsideration levels, if the determination is less than fully favorable.

20 C.F.R. § 404.1527(f).

In the Tenth Circuit, an ALJ is not required to make specific, written findings regarding each third-party lay opinion when the written decision reflects that the ALJ considered that opinion.  Blea, 466 F.3d at 914-15; Adams v. Chater, 93 F.3d 712, 715 (10th Cir. 1996).  In Adams, the court "decline[d] claimant's invitation to adopt a rule requiring an ALJ to make specific written findings of each witness's credibility,

particularly where the written decision reflects that the ALJ considered the testimony." 93 F.3d at 715. The <u>Adams</u> court determined "that the ALJ considered the testimony of claimant's wife in making his decision because he <u>specifically referred to it in his written opinion</u>," and the court found no error in the ALJ's failure to make specific, written <u>findings</u> regarding the testimony. <u>Id.</u> (emphasis added). Ten years later, the Tenth Circuit confirmed the rule that an ALJ is not required to make specific written findings regarding third-party lay opinions if the written decision reflects that the ALJ considered them. <u>Blea</u>, 466 F.3d at 915.

### B.      <u>The ALJ's Findings</u>

The ALJ explained how he weighed the opinion evidence in his decision. (R. 951-53). He accorded significant weight to the opinion of the state agency medical consultant who opined at the reconsideration evaluation in October 2013, Dr. Listerman. <u>Id.</u> at 951; <u>see also</u> R. 658. He explained that he based this weight on the fact the consultant "is familiar with the disability determination process and the Regulations, including the terms of art and legal and medical standards set forth therein." (R. 951). He stated, "More significantly, the State [sic] agency consultant's opinions are consistent with the medical evidence of record, which shows mild degenerative disc disease with preserved motor, sensory, and neurological function … [and] I added additional postural and hazard limitations due to the claimants continued back treatment and her chronic obstructive pulmonary disease." <u>Id.</u>

The ALJ noted that Dr. Seto, who treated Plaintiff's COPD, provided a medical source statement for less than sedentary work and for missing more than four days a

month.  Id. at 951-52.  He accorded only partial weight to Dr. Seto's opinion because "even though Dr. Seto is a treating provider, [] his opinion is not consistent with the evidence or supported by his own treatment notes."  Id. at 952.  He recognized Plaintiff's testimony that her doctor told her not to be around chemicals and gave the opinion "some weight, as it is reasonably consistent with the evidence of chronic obstructive pulmonary disease, [even though] this opinion is not contained in the medical record."  Id.

The ALJ summarized several physicians' letters in which Plaintiff had been excused from work due to acute conditions, and gave those opinions "little weight, as they do not reflect any specific limitations and are only temporary, non-permanent restrictions.  In addition, they are not consistent with the evidence indicating minimal obstructive airway disease with normal strength, sensation, and gait."  Id.  The ALJ recognized that on August 7, 2013 Ms. Miller noted that Plaintiff was cleared to work with no restrictions and Dr. Warrick had given Plaintiff no restrictions and stated that she could perform activities as tolerated after treating her in an emergency room.  (R. 952).  He accorded these opinions little weight "as the claimant's severe impairments would impose some limitations, as she has degenerative changes in her back, neck, and lungs."  Id.  He also noted that Ms. Miller is not an acceptable medical source.  Id.

Ms. Howard performed a consultative examination of Plaintiff for the agency on February 10, 2018 and provided a report of that examination along with a medical source statement relating her opinion regarding Plaintiff's physical abilities and limitations.  (R. 1349-59).  The ALJ noted Ms. Howard's opinion was that Plaintiff "could perform a

range of sedentary to light work." Id. at 952. He accorded the opinion some weight and provided an extensive explanation:

> I note that this conclusion was offered in February 2018, which is over three years after the date last insured, and it was based on a one-time evaluation. In addition, there is no support for the manipulative and reaching limitations given the diagnosis and the claimant's ability to perform fine and gross manipulation with no problems during the examination (Ex. 17F[, R. 1349-60]). Moreover, there is no evidence to support manipulative or driving limitations prior to the date last insured. Finally, I note that Ms. Howard is not an acceptable medical source, though her conclusions are still considered under 20 CFR 404.1527(f).

(R. 952-53).

The ALJ noted the lay opinions of Plaintiff's employers at Quick Stop and at Subway and of Plaintiff's daughter-in-law and accorded them little weight because they did not provide functional limitations and are not consistent with the evidence. Id. at 953.

## C. Analysis

As a preliminary matter, the court notes that the ALJ found Plaintiff's date last insured for disability insurance benefits was September 30, 2014. [6] (R. 944, 945, 946) (citing Ex. 20D, R. 1128-30). While the court presumes an ALJ can compute a date last insured from the information contained in Ex. 20D, the court cannot, and it does not find the date last insured is plainly stated in that exhibit. Nevertheless, Ex. 19D is a "DISCO

---

[6] The court recognizes that in its 2017 decision the court found Dr. Seto opined Plaintiff's limitations began in December 2013 which was two months after her date last insured, September 2013. (R. 1036). The court was correct in so finding as the record reveals that when the ALJ issued his earlier decision in October 2014 Plaintiff's date last insured was September 30, 2013. (R. 276) (dated April 16, 2014). Apparently, Plaintiff acquired more qualifying quarters of coverage through her work in the interim. In any case, the record supports the ALJ's finding when he made the decision at issue here that Plaintiff's date last insured was September 30, 2014.

DIB Insured Status Report" for Plaintiff dated January 30, 2018, and it clearly states

"DLI 09/30/2014." (R. 1126). The record supports the ALJ's finding and the court will

not entertain the Commissioner's assertion that the date last insured was September 30,

2013.

Plaintiff spends much of her Brief explaining how the ALJ could have weighed

the opinion evidence differently than he did and argues that if he had done so he would

have accorded the opinions different weight and would have found Plaintiff disabled.

The court acknowledges that there are many factors which affect the weight assigned to

opinion evidence. It is the ALJ's duty to evaluate those factors and assess the weight

accorded to each opinion. So long as the ALJ has applied the correct legal standard and

the record evidence supports the ALJ's findings the court must accept that finding, even

if weighed differently the evidence might support a different outcome, and even though

the court might have reached a different finding had the issue been before it de novo.

Lax, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the

evidence does not prevent an administrative agency's findings from being supported by

substantial evidence. We may not displace the agency's choice between two fairly

conflicting views, even though the court would justifiably have made a different choice

had the matter been before it de novo."); see also, Consolo v. Fed. Maritime Comm'n,

383 U.S. 607, 620 (1966) (same). If Plaintiff asserts an ALJ's finding of fact is

erroneous, he must show that the evidence cannot support such a finding but compels

another because as noted above, to overturn an agency's finding of fact the court "must

find that the evidence not only <u>supports</u> [a contrary] conclusion, but <u>compels</u> it." <u>Elias-Zacarias</u>, 502 U.S. at 481, n.1.

Plaintiff has not shown the evidence compels a different weighing of the medical source opinion evidence and the court finds it does not. Plaintiff argues Dr. Listerman did not consider all her severe impairments and he is not board certified or a specialist in any of Plaintiff's impairments. The record Plaintiff cites does not demonstrate Dr. Listerman did not consider her cervical degenerative disc disease. He listed DDD (degenerative disc disease) as one of Plaintiff's severe impairments (R. 178) and noted her diagnosis of chronic neck pain. (R. 181). Cervical degenerative disc disease is included within the ALJ's finding of DDD, and chronic neck pain is a symptom of cervical DDD. It could hardly be made more clear that the ALJ considered Plaintiff's cervical DDD. As to her allegation the ALJ did not consider "asthma/pleural effusion/bronchitis/emphysema" (Pl. Br. 25), she acknowledged in the preceding sentence that Dr. Listerman considered COPD – and Dr. Listerman specifically referred to a chest x-ray showing "pleural parenchymal scarring." (R. 181). More importantly, it is the ALJ's duty, not Dr. Listerman's, to consider all the evidence and all Plaintiff's severe impairments. Plaintiff acknowledged the ALJ considered these severe impairments. (Pl. Br. 25) (citing R. 946). That was a part of the context in which the ALJ evaluated Dr. Listerman's opinion and accorded it significant weight. Regarding Dr. Listerman's lack of "specialty" or board certification, the ALJ acknowledged that Dr. Listerman is a state agency non-examining physician and Dr. Seto was "a treating physician for the claimant's chronic obstructive pulmonary disease." (R. 951). Plaintiff

has not shown that the evidence compels according lesser weight to Dr. Listerman's opinion or greater weight to Dr. Seto's based on all the facts the ALJ considered.

Plaintiff argues the ALJ rejected Dr. Seto's opinion "because pulmonary functioning testing showed minimal obstructive disease" (Pl. Br. 26) and "apparently rejected Dr. Seto's opinions because [Plaintiff] continued to smoke." Id. at 27. As the court noted above, the ALJ did not reject Dr. Seto's opinion but instead accorded it only partial weight because "even though Dr. Seto is a treating provider, [] his opinion is not consistent with the evidence or supported by his own treatment notes." Id. at 952. Thus, the ALJ acknowledged that Dr. Seto was a treating source but discounted his opinion for two reasons—it was not consistent with the evidence and was not supported by Dr. Seto's treatment notes. The ALJ provided examples in support of his reasons:

> Pulmonary function testing showed only minimal obstructive disease, and Dr. Seto also indicated that the claimant should avoid all exposure to cigarette smoke, yet she continued to smoke a pack per day (Ex. 7F/136; 8F/4[, R. 794, 799]). Dr. Seto's own records note coarse breath sounds at times, but otherwise do not include any significant clinical findings, and oxygen saturation is typically around ninety-six percent (Ex. 9F, 15F[, R. 801-16, 1321-47]). Other treatment notes indicate that the claimant had normal breath sounds on a number of occasions (Ex. 2F/37; 4F/7, 18; 7F/7; 9F/6[, R. 455, 640, 651, 665, 806]).

Id. Review of the records cited by the ALJ reveal Dr. Seto's treatment notes are Exhibits 9F and 15F. Dr. Seto's Medical Source Statement is Exhibit 8F. The "other evidence" cited is Exs. 2F, 4F, and 7F. The "other evidence" with which the ALJ found Dr. Seto's opinion inconsistent was the pulmonary function testing which showed minimal obstructive disease, and the records showing normal breath sounds. Dr. Seto's treatment notes with which the ALJ found Dr. Seto's opinion inconsistent were those showing no

significant clinical findings, oxygen saturation around ninety-six percent, and Plaintiff should avoid all exposure to cigarette smoke.

The evidence cited by the ALJ supports each of his reasons to discount Dr. Seto's opinion. Dr. Seto opined that Plaintiff should avoid all exposure to cigarette smoke and that is inconsistent with Plaintiff's continued smoking. But, as Plaintiff points out, the ALJ did not apply the <u>Frey</u> test before discussing this inconsistency. <u>See</u> <u>e.g.</u>, <u>Frey v. Bowen</u>, 816 F.2d 508, 517 (10th Cir. 1987). The Commissioner argues that the ALJ did not deny benefits on the basis of an alleged failure to follow prescribed treatment. The court need not decide this issue because even assuming it was error for the ALJ to use this inconsistency as one example of an inconsistency between Dr. Seto's opinion and his treatment notes, the ALJ relied on two other inconsistencies—no significant clinical findings and oxygen saturation around ninety-six percent—that Plaintiff does not deny, and the record evidence supports.

Plaintiff's argument about inconsistencies between Dr. Seto's opinion and the other evidence fails for similar reasons. Plaintiff does not deny that the pulmonary function testing showed minimal obstructive disease but argues that this is not inconsistent with Dr. Seto's opinion because "Dr. Seto reviewed the pulmonary function testing, however, and noted small airway disease with <u>significant</u> reactivity involving the small airways." (Pl. Br. 26) (citing R. 791) (emphasis in Pl. Br.). Here is Dr. Seto's discussion of the pulmonary function test (PFT) results to which Plaintiff cites:

> PFT from Anderson Co. Showed [sic] small airway disease with significant reactivity involving small airways. FVC 3.29L or 87%, FEV1 2.45L or 82%, FEV1/FVC ratio of 74, FEF 25-75% 1.97 l/sec. Spirometry

> measurement was borderline normal with evidence of small airway disease. After bronchodilator challenge, FVC improved by 3%, FEV1 Improved by 5%, FEF 25-75% improved by 26%, suggestive of hyperreactive airway disease involving small airways.

(R. 791). As quoted above, Dr. Seto noted "significant reactivity involving small airways," and noted the results were "suggestive of hyperreactive airway disease involving small airways." However, Dr. Seto also acknowledged, "Spirometry measurement was borderline normal." None of this negates the ALJ's finding the PFT showed minimal obstructive disease. The ALJ's finding is confirmed by the record of the test and supported by Dr. Seto's statement that the measurement was "borderline normal." (R. 791, 794). At best, Plaintiff has shown that the ALJ might have given greater weight to Dr. Seto's evaluation of the PFT, but she has not demonstrated that the evidence compels greater weight. Moreover, the ALJ also supported his finding of inconsistencies by citing treatment records showing normal breath sounds, and Plaintiff does not dispute those records.

Plaintiff argues Ms. Howard's "other medical source" opinion should not have been given "some" weight because she is not an acceptable medical source, she examined Plaintiff on only one occasion, and because that occasion was more than four and one-half years after Plaintiff's date last insured it was not reflective of her abilities during the relevant time. (Pl. Br. 29). Plaintiff is generally correct in her assertions, but the ALJ explained his bases for according some weight to Ms. Howard's opinion.

He acknowledged that her examination occurred several years after the date last insured but reasoned that because Plaintiff's "conditions are degenerative in nature and

would be expected to worsen, not drastically improve, over time," the fact Ms. Howard opined that Plaintiff was still able to work several years after Plaintiff's date last insured supports a finding that she was able to work at the earlier time. (R. 951). He reasoned his finding was supported by the fact the results of Ms. Howard's "examination are generally normal, such as the lack of muscle spasm, normal strength, and negative straight leg raises [and are] consistent with the majority of the evidence from before the date last insured and … with [Plaintiff's] reported activities of daily living." Id. However, he noted that the opinion was given only some weight because it was offered in February 2018, which is over three years after the date last insured,[7] and was based on a one-time evaluation. Id. at 952-53. He found no support for Ms. Howard's suggested manipulative and reaching limitations and no evidence to support driving limitations prior to the date last insured. Id. at 953. He noted that Ms. Howard is not an acceptable medical source. Id. Plaintiff has shown no basis to further discount the opinion.

Plaintiff's claim the ALJ "rejected every opinion [Plaintiff] should avoid strenuous activity and taking [her] off work during periods of COPD exacerbations, [and] should have considered the fact [she] would need to be off work periodically due to COPD exacerbations," fails also. (Pl. Br. 29) (citing R. 952). This claim relates to the ALJ's consideration of "a series of letters excusing the claimant from work, … [and] several notes indicating that she should not work on that particular day following an exacerbation of her breathing condition or that she should not perform strenuous activity." (R. 952).

---

[7] Plaintiff's argument that it was more than four and one-half years later appears based on the incorrect assumption that the date last insured remained September 30, 2013.

However, once again the ALJ explained he gave these opinions little weight because "they do not reflect any specific limitations and are only temporary, non-permanent restrictions …, [and] they are not consistent with the evidence indicating minimal obstructive airway disease with normal strength, sensation, and gait." Id. The ALJ's explanation is supported by the record evidence and is a reasonable understanding of that evidence. Plaintiff's argument appears to rest on her reliance on Dr. Seto's opinion that "she would miss more than four days per month as a result of her impairments or treatment" (Pl. Br. 26), and ignores both that the ALJ properly discounted Dr. Seto's opinion and that individuals throughout the economy routinely miss work because of acute sicknesses causing "only temporary, non-permanent restrictions," but continue to maintain their employment, just as Plaintiff's part-time work was not terminated in the instances to which she appeals.

Plaintiff claims the ALJ applied an incorrect legal standard when weighing the lay opinions of her employers and daughter-in-law because the reason for "third party statements is not to issue an opinion as to functional limitations; rather, it is to shed additional light on how the individual Plaintiff is affected by the symptoms as the symptoms experienced can demonstrate greater severity than the objective medical evidence alone." (Pl. Br. 32-33). Plaintiff is correct that lay opinions may provide additional light on how a claimant is affected by her symptoms. However, the ALJ considered those opinions as he is required to do by the law in the Tenth Circuit, and more than that, he explained why he discounted the opinions. (R. 953). More is not required. While the ALJ might have accorded greater weight to those opinions, and

Plaintiff clearly wishes he had, the evidence does not compel that result.  Plaintiff has shown no reversible error in the ALJ's consideration of the opinion evidence.

## III.    The ALJ's Consideration of Plaintiff's Allegation of Disabling Symptoms

Plaintiff claims that in considering her allegations of disabling symptoms the ALJ erroneously focused on her part-time work, her application for unemployment benefits, her purported lack of use of narcotic medications, and her daily activities as inconsistent with her allegations of disability.  (Pl. Br. 30-32).  The Commissioner argues the ALJ reasonably evaluated Plaintiff's allegations of disabling symptoms.  He argues that although Plaintiff does not have to prove she is bedridden, it is her burden to prove she has disabling limitations.  (Comm'r Br. 11).  He argues:

> the ALJ discounted Plaintiff's statements because: 1) the objective medical evidence did not support her allegations of disabling limitations; 2) her reported daily activities were inconsistent with her allegations of disabling limitations; 3) she asked her doctor to certify she was able to work in order to obtain unemployment; and 4) while she complained of debilitating pain, she did not require significant narcotic pain medication.

Id. at 11.  He argues each of these are valid reasons and are supported by the record evidence as the ALJ discussed and explained.  Id. at 11-14.

### A.    Standard for Evaluating Plaintiff's Allegations of Symptoms

The Tenth Circuit has explained the analysis for considering subjective allegations regarding symptoms.  Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability.  Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could

reasonably be expected to produce the alleged disabling pain. This court
has stated: The framework for the proper analysis of Claimant's evidence
of pain is set out in <u>Luna v. Bowen</u>, 834 F.2d 161 (10th Cir. 1987). We
must consider (1) whether Claimant established a pain-producing
impairment by objective medical evidence; (2) if so, whether there is a
"loose nexus" between the proven impairment and the Claimant's
subjective allegations of pain; and (3) if so, whether, considering all the
evidence, both objective and subjective, Claimant's pain is in fact
disabling.

<u>Thompson</u>, 987 F.2d at 1488 (citations and quotation omitted).

In evaluating a claimant's allegations of symptoms, the court has recognized a

non-exhaustive list of factors which should be considered. <u>Luna</u>, 834 F.2d at 165-66; <u>see</u>

<u>also</u> 20 C.F.R. § 404.1529(c)(3). These factors include:

the levels of medication and their effectiveness, the extensiveness of the
attempts (medical or nonmedical) to obtain relief, the frequency of medical
contacts, the nature of daily activities, subjective measures of credibility
that are peculiarly within the judgment of the ALJ, the motivation of and
relationship between the claimant and other witnesses, and the consistency
or compatibility of nonmedical testimony with objective medical evidence.

<u>Kepler v. Chater</u>, 68 F.3d 387, 391 (10th Cir. 1995) (quoting <u>Thompson</u>, 987 F.2d at

1489).[8]

---

[8] <u>Luna</u>, <u>Thompson</u>, <u>Kepler</u>, and other cases cited below were decided when the term used
to describe the evaluation of a claimant's allegations of symptoms resulting from her
impairments was "credibility determination." Although that term is no longer used, the
applicable regulation <u>never</u> used that term and the procedure for evaluating a claimant's
allegations of symptoms has not significantly changed. <u>Revisions to Rules Regarding the</u>
<u>Evaluation of Medical Evidence</u>, 82 Fed. Reg. 5844-01, 5871 (Jan. 18, 2017) (codified at
20 C.F.R. § 404.1529). Therefore, the three-step framework set out in <u>Luna</u>, based on 20
C.F.R. § 404.1529 (2017) is still the proper standard to be used as explained in the
regulations in effect on August 15, 2018, when this case was decided. Nonetheless, to
the extent that "subjective measures of credibility that are peculiarly within the judgment
of the ALJ" relate to an examination of a claimant's character, it is specifically prohibited
by SSR 16-3p, and is no longer a valid factor to be considered.

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations of symptoms which overlap and expand upon the factors stated by the courts: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. § 404.1529(c)(3)(i-vii).

An ALJ's evaluation of a claimant's allegations of symptoms is generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). Such "determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173. However, such findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

**B.      The ALJ's Consideration of Plaintiff's Allegations of Symptoms**

Beginning his RFC assessment, the ALJ explained that he had considered Plaintiff's allegations of "symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." (R. 948). He

summarized the regulatory standard he applied and summarized Plaintiff's allegations of limiting symptoms.  Id. at 948-49.

He evaluated the medical evidence and found "the objective findings in this case do not support the existence of limitations greater than those found in the residual functional capacity."  Id. at 949.  Consequently, he continued in accordance with the applicable legal standard and found "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  Id. at 949-50.  He found, "The claimant's activities of daily living, continued work, medication use, and objective medical findings are not consistent with her allegations of disabling symptoms."  Id. at 950.

### C.    Analysis

Plaintiff attacks the ALJ's reliance on her part-time work on the basis of non-binding Eighth Circuit cases for the proposition that part time work is not equivalent to full-time work and unfairly requires the plaintiff to prove that she cannot do other work at step five of the sequential evaluation process.  (Pl. Br. 30-31).  Apart from not relying on Tenth Circuit law, Plaintiff's argument misses the point of the ALJ's reliance on her part-time work.  The ALJ explained he was relying on the part-time work primarily because in that work Plaintiff "was performing work activities that would exceed the residual functional capacity [assessed by the ALJ, and] was leading to an increase in her pain and symptoms."  (R. 950).  The RFC he assessed allowed only occasionally stooping,

kneeling, or crouching, and occasional exposure to extreme heat, id. at 948, but he noted that in her part-time work she did "lots of bending at work," and "worked around hot ovens" which "suggests that she could have worked on a fulltime basis at a job that did not require significant bending or working with temperature extremes." Id. at 950. This is a reasonable understanding of the evidence, and therefore a valid inconsistency between Plaintiff's part-time work and her allegations of disabling symptoms.

Similarly, Plaintiff's argument that the ALJ erroneously relied on her application for unemployment is also misplaced. The ALJ explained, Plaintiff "applied for unemployment and asked her doctor to certify that she was able to work." Id. (citing Ex. 4F/13, R. 646). This is clearly inconsistent with Plaintiff's allegation that she is disabled. Moreover, in the evidence to which the ALJ cited in this regard, Ms. Miller recorded, "She has never been told that [she cannot work due to her health] by our office and is physically able to work. She has a dx of chronic neck and back pain, but this has not limited her at work. Forms filled out to this effect and pt is cleared to work with no restrictions." (R. 646).

Plaintiff argues it was error for the ALJ to rely on her "purported lack of narcotic [medication] use" because during the relevant time she used three different narcotic medications, "sometimes two at a time." (Pl. Br. 31). Again, Plaintiff misconstrues the ALJ's analysis:

> The record also indicates that the claimant has not required significant use of narcotic medication. I note that at follow-ups in September and November 2009, the claimant reported that she had been using her pain medications very infrequently, and yet she was able to take care of her children and work part-time (Ex. 1F/6; 2F/27, 30). In January 2014, she

> stated that she only takes hydrocodone two to three times a week when her back is hurting (Ex. 7F/98). The claimant's infrequent use of her pain medications is not entirely consistent with her alleged levels of pain. Nonetheless, I note that she did use physical therapy and a TENS unit, which is consistent with her allegations. While she ultimately did receive an epidural injection, it was not until December 2015, which indicates her symptoms worsened after the date last insured (Ex. 14F/8).

(R. 950). The ALJ was relying on evidence Plaintiff did not require <u>significant use</u> of narcotic medication throughout the relevant period. Despite Plaintiff's contrary protestations, the record supports his finding. Moreover, his analysis reflects careful and thorough consideration of the evidence over time.

Finally, Plaintiff argues that the ALJ's consideration of her activities of daily living was a "selective and misleading evidentiary review" which relies on activities that are not the type to undermine her allegations. (Pl. Br. 32). The court once again quotes the ALJ's full analysis:

> With regard to her activities of daily living, the claimant has reported a number of activities that are inconsistent with disabling levels of pain. She cooks, she does household chores, and she mows the yard once a month (Ex. 6E/7-8). She also drives, goes shopping, and crochets (Ex. 6E/9-10). In her August 2013 function report, she stated that she does not do yard work (Ex. 12E/9). In May 2014, however, she told her doctor that she mowed her lawn, and she did not mention any increase in back pain (Ex. 7F/120). These types of activities are consistent with a light level of work, which requires some level of standing and lifting a small amount of weight.

(R. 950). While the ALJ did not mention every limitation Plaintiff reported on the activities she performed, in context his evaluation does not reveal a selective and misleading review. Moreover, his discussion reveals a direct inconsistency between Plaintiff's report of limitation to the agency and what she reported to her doctor. <u>Id.</u> at 778 ("She felt better yesterday, she mowed the lawn. Wore a mask."). The apparent

emphasis in that treatment note was Plaintiff's COPD. There was no mention of pain, particularly musculoskeletal pain, within the entire note of that visit. Id. at 778-80. While the activities relied upon do not demonstrate conclusively that Plaintiff is able to work full-time, as the ALJ noted they are the types of activities "which requires some level of standing and lifting a small amount of weight." Id. at 950.

Plaintiff has shown no reversible error in the decision at issue.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated February 27, 2020, at Kansas City, Kansas.

s:/  John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**